**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roger L. Johnson and Audrey Lynne Rounding, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>Owners Insurance Company, a foreign corporation; First Alarm Investigations, LLC, an Arizona limited liability company; Bruce Wolke and Jane Doe Wolke, husband and wife; John and Jane Does 1–X, fictitious individuals; and ABC Corporations 1–X, fictitious entities,<br><br>Defendants. | No. CV-16-00845-PHX-NVW<br><br>**ORDER** |

An insurance company hired an investigator to assess a home's fire damage and then offered the homeowners a repair estimate. The homeowners, dissatisfied with the estimate and the handling of their claim, sued in state court. They sued the insurance company for breach of contract and bad faith, and they sued the investigator for negligence, misrepresentation, and aiding and abetting the insurance company's misconduct.

The homeowners and the investigator are Arizona citizens, but the insurance company is not. The insurance company removed based on diversity jurisdiction, claiming the investigator was fraudulently joined. The homeowners move to remand. The investigator moves to dismiss the homeowners' claims under Rule 12(b)(6).

Before the Court are the homeowners' motion to remand (Doc. 18), the investigator's motion to dismiss (Doc. 35), and all accompanying briefs. For the reasons that follow, the motion to remand will be granted, precluding this Court from ruling on the motion to dismiss. On remand, the Superior Court may rule on the motion to dismiss.

## I.   BACKGROUND

### A.   Allegations underlying the homeowners' claims

The Amended Complaint alleges as follows. (Doc. 10.) Roger Johnson and Audrey Rounding ("the Johnsons") own a home in Phoenix, Arizona. (*Id.*, ¶ 13.) The home was insured through a policy issued by Owners Insurance Company ("Owners"). (*Id.*, ¶¶ 2, 14.)

In July 2014, the home suffered extensive fire damage. (*Id.*, ¶ 15.) The Johnsons promptly reported the damage to Owners. (*Id.*, ¶ 16.) Owners hired Bruce Wolke, a certified fire investigator, to assess the home for smoke damage and environmental risk. (*Id.*, ¶¶ 4, 6–7.) The assessment involved swabbing surfaces in the home with a cloth to collect dust samples and then taking those samples to a lab, where a chemist would analyze the samples for traces of soot. (*Id.*, ¶ 42; Doc. 1-1 at 26–28.)

At Owners' instruction, Wolke swabbed only clean surfaces, which were less likely to contain soot. (Doc. 10, ¶ 41.) Wolke also pressed his swab cloth only lightly across surfaces, to avoid collecting soot. (*Id.*, ¶ 42.) While collecting samples, Wolke told the Johnsons that he saw no smoke damage and that the home was safe, even though he knew or should have known otherwise. (*Id.*, ¶ 72; Doc. 42-1 at 2.) Lab analysis of Wolke's samples revealed only minimal amounts of soot. (Doc. 1-1 at 28.)

Owners knew that Wolke's samples were not representative, and they knew that the home actually contained substantial amounts of soot that could be hazardous to the Johnsons' health. (Doc. 10 at ¶¶ 21–22, 46–48.) However, Owners gave the Johnsons a low-ball repair estimate, which ignored the soot damage. (*Id.*, ¶ 20.) The Johnsons hired their own adjusters, who pointed out errors in Owners' estimate including the omission of

soot damage. (*Id.*, ¶¶ 37–38; Doc. 42-1 at 3.) Owners refused to reconsider its position and instead attempted to delay payment. (*Id.*, ¶¶ 35–36.)

### B.  Procedural history of this case

The Johnsons sued Owners, Wolke, and Wolke's company (First Alarm Investigations, LLC) in state court. (Doc. 1-1 at 2–14.) The complaint contained five counts. Three of the counts—breach of contract, bad faith, and punitive damages—were asserted only against Owners. (*Id.* at 9, 13.) The other two counts—entitled "Negligence" and "Intentional / Negligent Misrepresentation"—were asserted against all defendants. (*Id.* at 11.)

Owners removed to this Court on the basis of diversity jurisdiction, claiming the Johnsons are Arizona citizens and Owners is a Michigan citizen. (Doc. 1, ¶¶ 4–5.) Owners also claimed that Wolke and his company were fraudulently joined in this action, so their citizenship need not be considered for diversity purposes. (*Id.*, ¶ 6.)

After removal, the Johnsons amended their complaint. (Doc. 10.) The Amended Complaint offers more detailed allegations regarding Wolke's contractual relationship with Owners and his role in assessing the Johnsons' home. (*Id.*, ¶¶ 4–7, 43–45.) The Amended Complaint clarifies that the negligence and misrepresentation counts are asserted only against Wolke and his company, and it adds another count against Wolke and his company entitled "Aiding and Abetting Tortious Conduct." (*Id.* at 11–15.)

On the basis of their Amended Complaint, the Johnsons move to remand. (Doc. 18.) They contend that Wolke and his company[1] are Arizona citizens against whom they have asserted viable claims, so diversity of citizenship does not exist.

In response, Owners and Wolke (collectively "Defendants") insist that the Johnsons have not stated viable claims against Wolke. (Docs. 30, 34.) Owners further argues that inadequacies and inconsistencies in the Amended Complaint indicate the reason the Johnsons sued Wolke was to destroy diversity. (Doc. 34 at 9–14.)

---

[1] Hereafter, Wolke and his company will be collectively referred to as "Wolke" when the difference is unimportant.

In addition to opposing remand, Wolke moves to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 35.)

## II.   ANALYSIS

The motion to remand must be addressed before the motion to dismiss, since a "federal court generally may not rule on the merits of a case without first determining that it has jurisdiction." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007); *see also* 14C Charles A. Wright, Arthur R. Miller, et al., *Federal Practice & Procedure* § 3739 (4th ed., Apr. 2016 update).

### A.   Fraudulent joinder standard

A defendant may remove an action to federal court based on diversity jurisdiction. 28 U.S.C. § 1441(a). However, the removal statute is strictly construed against removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Thus, the defendant has the burden of establishing that removal is proper, and federal jurisdiction must be rejected if there is any doubt as to the right of removal. *Id.*

Although diversity jurisdiction usually requires complete diversity of citizenship, diversity is not defeated where a non-diverse defendant has been "fraudulently joined." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Fraudulent joinder is a term of art; joinder is fraudulent if the plaintiff "fails to state a cause of action" against the non-diverse defendant and "the failure is obvious according to the settled rules of the state." *Id.* (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)). Because the failure to state a cause of action must be "obvious," fraudulent joinder scrutiny is more lenient toward the plaintiff than scrutiny under Rule 12(b)(6). *See Davis v. Prentiss Properties Ltd., Inc.*, 66 F. Supp. 2d 1112, 1115 (C.D. Cal. 1999). Likewise, because the failure must be obvious according to "settled" state law, ambiguities in state law must be resolved in the plaintiff's favor. *See Padilla v. AT&T Corp.*, 697 F. Supp. 2d 1156, 1158–59 (C.D. Cal. 2009). Thus, a defendant who claims fraudulent joinder bears a "heavy burden." *Weeping Hollow Ave. Trust v.*

*Spencer*, --- F.3d ----, 2016 WL 4088740, at *3–4 (9th Cir. Aug. 2, 2016). "In borderline situations, where it is doubtful whether the complaint states a cause of action against the resident defendant, the doubt is ordinarily resolved in favor of the retention of the cause in state court." *Albi v. Street & Smith Publications*, 140 F.2d 310, 312 (9th Cir. 1944).

Diversity upon which removal is predicated should generally be determined from the face of the complaint filed in state court. *Miller v. Grgurich*, 763 F.2d 372, 373 (9th Cir. 1985). However, where fraudulent joinder is at issue, the defendant seeking removal is entitled to present facts showing the joinder to be fraudulent, *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998), and the plaintiff may amend the complaint to add allegations substantiating his claims against the non-diverse defendant, *Thornton v. New York Life Ins. Co.*, 211 F.R.D. 606, 608–10 (N.D. Cal. 2002); *Loid v. Computer Scis. Corp.*, No. CV-12-5144-EFS, 2013 WL 808696, at *4–5 (E.D. Wash. Mar. 5, 2013).

### B. Not all of the Johnsons' claims against Wolke obviously fail under settled Arizona law.

The Johnsons fail to state a claim for negligence or negligent misrepresentation against Wolke, and this failure is obvious according to settled Arizona law. However, the same cannot be said for their claims of intentional misrepresentation or aiding and abetting Owners' tortious conduct. Therefore, remand is necessary.

#### 1. Negligence

To state a claim for negligence, the Johnsons must allege that Wolke owed them a duty of care. *Gipson v. Kasey*, 214 Ariz. 141, 143, 150 P.3d 228, 230 (2007). The existence of a duty "is a threshold issue; absent some duty, an action for negligence cannot be maintained." *Id.*

Under Arizona law, Wolke did not owe a duty to the Johnsons. The Arizona Court of Appeals decided this issue on similar facts in *Meineke v. GAB Business Services, Inc.*, 195 Ariz. 564, 991 P.2d 267 (Ct. App. 1999). There, like here, an insurance company hired an independent adjusting firm to investigate a homeowner's claim for fire damage, and the homeowners sued the adjusters for negligence. *Id.* at 565, 991 P.2d at 268. The court held that the adjusters did not owe a duty to the homeowners for three

reasons: (1) the adjusters' relationship with the homeowners was attenuated by the fact that the insurance company had control, via contract, over the nature and extent of the adjusters' investigation, (2) the adjusters, as agents of the insurance company, owed a duty of loyalty to the insurance company that might conflict with a duty to the homeowners, and (3) Arizona law prevented the homeowners from suing the insurance company itself for negligent claim mishandling (as opposed to breach of contract or bad faith), and the same rule should apply to the insurance company's adjusters. *Id.* at 567–68, 991 P.2d at 270–71.

This analysis is decisive here. Owners hired Wolke to do essentially what the independent adjusters did in *Meineke*: assess fire damage in a home covered under an insurance policy. Thus, the Johnsons' negligence claim against Wolke fails just like the negligence claim in *Meineke*, and this failure is obvious according to settled Arizona law. *See Didyoung v. Allstate Ins. Co.*, No. CV-12-348-PHX-GMS, 2012 WL 1983779, at \*4–5 (D. Ariz. June 4, 2012) (plaintiffs' negligence claim against third-party adjuster did not have "glimmer of hope" of success under Arizona law).

The Johnsons attempt to distinguish *Meineke* on the grounds that Wolke was acting as an "independent contractor" instead of an "independent adjuster" and that he had "expertise beyond the scope and knowledge of an adjuster." (Doc. 18 at 12–13.) But the distinction between "contractor" and "adjuster" is hollow because Wolke was under contract to perform what was essentially the service of an adjuster, and any "expertise" he had was to be utilized in that service. The Johnsons do not explain how the distinctions they identify are of any legal significance.

### 2. Negligent misrepresentation

Arizona recognizes the tort of negligent misrepresentation as defined in the Restatement (Second) of Torts. *St. Joseph's Hosp. v. Reserve Life Ins.*, 154 Ariz. 307, 312, 742 P.2d 808, 813 (1987). The Restatement defines negligent misrepresentation as the breach of a particular kind of duty governing the communication of information:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1) (1977). Accordingly, to state a claim for negligent misrepresentation, the Johnsons must allege that Wolke owed them a duty "to exercise reasonable care or competence in obtaining or communicating" information. *See Van Buren v. Pima Cmty. Coll. Dist. Bd.*, 113 Ariz. 85, 87, 546 P.2d 821, 823 (1976) (negligent misrepresentation claim requires existence of duty). The Restatement further clarifies that the duty extends only to certain recipients of information:

> [L]iability . . . is limited to loss suffered . . . by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it . . . .

Restatement (Second) of Torts § 552(2). Thus, to claim negligent misrepresentation, the Johnsons must be in the "limited group of persons for whose benefit and guidance" Wolke intended to supply the information.

As explained, Wolke did not owe a duty to the Johnsons. Likewise, the Johnsons were not in the group of persons for whose benefit and guidance Wolke intended to supply any information. After all, Wolke was hired by Owners, not the Johnsons. The Johnsons' failure to state a negligent misrepresentation claim is obvious under settled Arizona law.

### 3. Intentional misrepresentation

To state a claim for intentional misrepresentation or fraud, the Johnsons must allege that (1) Wolke made a representation to them that was (2) false and (3) material, (4) he knew the representation was false or was ignorant of its truth, (5) he intended that they rely on the representation in the manner reasonably contemplated, (6) they did not know the representation was false, (7) they relied on the representation, (8) their reliance

was reasonable, and (9) they were harmed as a result. *See Echols v. Beauty Built Homes, Inc.*, 132 Ariz. 498, 500, 647 P.2d 629, 631 (1982). The Johnsons must also state the circumstances constituting fraud "with particularity." Ariz. R. Civ. P. 9(b).[2] Because fraud is an intentional tort, the Johnsons need not allege that Wolke owed them a duty. *See Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 483–84, 38 P.3d 12, 21–22 (2002).

Defendants argue that the Johnsons fail to specifically allege element (5): Wolke's intent that the Johnsons rely on his representation. (Doc. 30 at 13; Doc. 34 at 7.) The Johnsons do not respond to this argument (*see* Doc. 42), and a review of the Amended Complaint confirms that the element is missing. Because the element is plainly necessary to sustain a fraud claim in Arizona, the Johnsons' failure to state a claim is obvious under settled Arizona law.

### 4. Aiding and abetting

The Johnsons' final claim against Wolke is that he aided and abetted Owners' tortious conduct. Even though the Johnsons did not assert this claim until after removal, it may be considered in determining whether Wolke was fraudulently joined at the time of removal. *Loid v. Computer Scis. Corp.*, No. CV-12-5144-EFS, 2013 WL 808696, at *4–5 (E.D. Wash. Mar. 5, 2013).

To state a claim for aiding and abetting, the Johnsons must allege that (1) Owners committed a tort that injured the Johnsons, (2) Wolke knew that Owners' conduct was a breach of duty, and (3) Wolke substantially assisted or encouraged Owners in that breach. *Wells Fargo*, 201 Ariz. at 485, 38 P.3d at 23. Like the fraud claim, the claim for aiding

---

[2] The Arizona Rules of Civil Procedure supply the particularity requirement here, not the Federal Rules. Although Federal Rule 9(b) applies to state-law claims in federal court, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003), the Johnsons' motion for remand presents the threshold question of whether their claims belong in federal court at all. Thus, to require compliance with Federal Rule 9(b) at this stage would beg the question. In any event, the differences between Arizona Rule 9(b) and Federal Rule 9(b) are immaterial.

and abetting does not depend on an allegation that Wolke owed a duty to the Johnsons. *See id.*

The Johnsons' allegations may well fail to state a claim for aiding and abetting. But Defendants have not carried their heavy burden of showing that such a failure is obvious. After all, the Johnsons allege that (1) Owners acted in bad faith toward the Johnsons by low-balling the repair estimate, (2) Wolke knew that a low-ball estimate would breach the Owners' duty toward the Johnsons, and (3) Wolke substantially assisted this breach by collecting inadequate samples from the Johnsons' home and misrepresenting the amount of smoke damage. (Doc. 10, ¶¶ 20, 35–36, 41–42, 72, 80–84.)

Defendants argue that Wolke cannot have aided and abetted Owners' bad faith because he was not negligent or fraudulent and therefore did not engage in a "separate tortious act." (Doc. 30 at 16; *see* Doc. 34 at 9.) This argument misunderstands the law. One can be liable for aiding and abetting another's tort without having committed an independent tort in the first instance. *See* Restatement (Second) of Torts § 876(b). Indeed, that is what makes aiding and abetting "a theory of secondary liability." *Wells Fargo*, 201 Ariz. at 485, 38 P.3d at 23.

Defendants appear to be referring to the rule that a single act cannot give rise to both a bad faith claim against an insurance company and an aiding and abetting claim against an adjuster. *Ortiz v. Zurich Am. Ins. Co.*, No. CV-13-02097-PHX-JAT, 2014 WL 1410433, at *3 (D. Ariz. Apr. 11, 2014). But that may not be this case. The Johnsons' bad faith claim arises from Owners' low-balling and delay tactics, whereas their aiding and abetting claim arises from Wolke's misleading smoke damage assessment. It cannot be determined on the face of the Amended Complaint whether these are separate acts or really the same.

Owners argues that the Johnsons do not allege how Wolke harmed the Johnsons beyond the harm caused by Owners' bad faith. But Owners does not explain why such an allegation is necessary for an aiding and abetting claim.

Wolke argues that the Johnsons' allegations are not sufficiently specific under Rule 9(b). But Wolke does not explain why Rule 9(b) applies to the aiding and abetting claim, and in any event the Johnsons' allegations are reasonably specific.

Thus, Defendants have not shown that the Johnsons' aiding and abetting claim against Wolke fails in a way that is obvious under settled Arizona law. As a result, Defendants have not demonstrated fraudulent joinder, and remand is necessary.

### C. Claims that the Johnsons lack evidence or intend to destroy diversity do not show fraudulent joinder in this case.

In the last part of its brief, Owners argues that some of the allegations in the Amended Complaint "lack evidentiary support" and indicate an "intent to destroy diversity." (Doc. 34 at 9–14.) These arguments miss the mark.

While a defendant seeking removal is entitled to present facts showing joinder to be fraudulent, *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1988), that does not authorize the defendant to make evidentiary challenges unrelated to jurisdiction, nor does it impose a burden of proof on the plaintiff. Accordingly, Owners' argument that Wolke's company (First Alarm Investigations, LLC) was improperly named as a defendant is premature because, even if true, it does not restore diversity since Wolke is an Arizona citizen too. Similarly, claims that Wolke did not actually know of any low-ball scheme or misrepresent any smoke damage are premature attempts to resolve disputed issues of fact.

Additionally, whether the Johnsons sued Wolke in order to destroy diversity is largely beside the point. The "motive of the plaintiff, taken by itself, does not affect the right to remove. If there is a joint liability, he has an absolute right to enforce it, whatever the reason that makes him wish to assert the right." *Chicago, R.I. & P. Ry. Co. v. Schwyhart*, 227 U.S. 184, 193 (1913). The Ninth Circuit has repeatedly observed that so-called "fraudulent" joinder is a "term of art." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)). Rather than "focusing on the 'mental state' of the plaintiff,

the fraudulent joinder inquiry focuses on the validity of the legal theory being asserted against the non-diverse defendant." *Davis v. Prentiss Properties Ltd., Inc.*, 66 F. Supp. 2d 1112, 1114 (C.D. Cal. 1999). Owners' various criticisms of the Amended Complaint—that it contains inconsistencies, was modified after removal, and seeks the same damages against all defendants—do not show that the legal theories asserted against Wolke are invalid.

Because Defendants have not met their burden of demonstrating that joinder of Wolke was fraudulent, this case must be remanded.

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Remand (Doc. 18) is granted.

IT IS FURTHER ORDERED that Defendant First Alarm Investigations, LLC, and Bruce Wolke's Motion to Dismiss (Doc. 35) is denied as moot.

IT IS FURTHER ORDERED directing the clerk to remand this case to the Superior Court of Arizona, Maricopa County.

Dated this 5th day of August, 2016.

Neil V. Wake
Senior United States District Judge